UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

KRISTA L.[1],
     Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 3:23-cv-144
Newman, J.
Litkovitz, MJ.

REPORT AND
RECOMMENDATION

     Plaintiff Krista L. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 7), the Commissioner's response in opposition (Doc. 9), and plaintiff's reply memorandum (Doc. 10).

**I. Procedural Background**

    **A. Plaintiff's previous application**

     Plaintiff previously applied for disability benefits in November 2017. That application was denied initially and upon reconsideration. Plaintiff requested and was granted a *de novo* hearing before Administrative Law Judge (ALJ) Gregory Kenyon. ALJ Kenyon denied plaintiff's application on August 22, 2019. (Tr. 66-81). On May 21, 2020, the Appeals Council denied plaintiff's request for review (Tr. 86-89), making the ALJ's decision the final decision of the Commissioner.

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment, or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

### B. Plaintiff's current application

Plaintiff protectively filed another DIB application on June 10, 2020, alleging disability beginning November 6, 2017 due to post traumatic stress disorder (PTSD), major depressive disorder, vertigo (possible Meniere's), nystagmus, myopic astigmatism, chronic pain - neck, knee, and back, insomnia, migraines, osteoarthritis, and tinnitus. (Tr. 10, 185-192). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before ALJ Kenyon on February 23, 2021. On April 19, 2021, the ALJ issued a decision again denying plaintiff's application. (Tr. 10-28). The Appeals Council denied plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 1-6).

Plaintiff appealed the denial of her application to this Court. *See Krista L. v. Comm'r of Soc. Sec.*, No. 3:21-cv-270 (S.D. Ohio). Upon a joint motion to remand, the matter was remanded to the Commissioner for further proceedings.

A second hearing was held on October 4, 2022, with ALJ Kenyon. (Tr. 2039-2057). ALJ Kenyon issued a partially favorable decision on November 22, 2022, finding plaintiff disabled as of April 13, 2022, the date plaintiff's age category changed under Medical-Vocational Rule 202.06. (Tr. 2010-2028). The ALJ determined plaintiff was not disabled before April 13, 2022. This decision became the final decision of the Commissioner when the Appeals Council denied review on March 27, 2023. (Tr. 2002-2009).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).

The impairment must render the claimant unable to engage in the work previously performed or

in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §

423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four

steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.  *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir.

1999).

### B.  The Administrative Law Judge's Findings

ALJ Kenyon applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2023.

2. [Plaintiff] has not engaged in substantial gainful activity since November 6, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. Since the alleged onset date of disability, November 6, 2017, [plaintiff] has had the following severe impairments: degenerative joint disease of the knees; degenerative disc disease of the lumbar spine and cervical spine; Meniere's disease; obesity; depression; and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

4. Since November 6, 2017, [plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that since November 6, 2017, [plaintiff] has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can perform occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs. She can never climb ladders, ropes, or scaffolds. She cannot work around hazards, such as unprotected heights or dangerous machinery. She cannot drive automotive equipment. She is limited to performing simple, routine, repetitive tasks. She can have occasional superficial contact with coworkers and supervisors (superficial social contact is defined as able to receive simple instruction, ask simple questions, and receive performance appraisals, but as unable to engage in more complex social interactions, such as persuading other people or resolving interpersonal conflicts). She cannot have any public contact. She cannot perform fast-paced work. She cannot tolerate strict production quotas. She is limited to performing jobs which involve very little, if, any, changes in the job duties or the work routine from one day to the next.

6. Since November 6, 2017, [plaintiff] has been unable to perform any past relevant work (20 CFR 404.1565).[2]

7. Prior to the established disability onset date, [plaintiff] was an individual closely approaching advanced age. On April 13, 2022, [plaintiff's] age category changed to an individual of advanced age (20 CFR 404.1563).

---

[2] Plaintiff's past relevant work was as a customer service representative, a sedentary, heavy as performed, semi-skilled job. (Tr. 2026, 2053-2054).

4

8. [Plaintiff] has at least a high school education (20 CFR 404.1564).

9. Prior to April 13, 2022, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled" whether or not [plaintiff] has transferable job skills. Beginning on April 13, 2022, [plaintiff] has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to April 13, 2022, the date [plaintiff's] age category changed, considering [plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed (20 CFR 404.1569 and 404.1569a).[3]

11. Beginning on April 13, 2022, the date [plaintiff's] age category changed, considering [plaintiff's] age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that [plaintiff] could perform (20 CFR 404.1560(c) and 404.1566).

12. [Plaintiff] was not disabled prior to April 13, 2022 but became disabled on that date and has continued to be disabled through the date of this decision. Her disability is expected to last twelve months past the onset date (20 CFR 404.1520(g)).

(Tr. 2016-2028).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___

---

[3] The ALJ relied on the vocational expert's testimony to find prior to April 13, 2022, plaintiff would have been able to perform the requirements of representative light, unskilled occupations such as mail clerk (130,000 jobs nationally), routing clerk (140,000 jobs nationally), and merchandise marker (150,000 jobs nationally). (Tr. 2027, 2055).

5

U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors[4]

Plaintiff argues the ALJ erred by using the wrong legal standard, thus creating an unwarranted additional procedural burden for her to overcome by failing to take a "fresh look" at plaintiff's medical evidence in crafting her RFC. (Doc. 7, at PAGEID 3225-3233). She further contends ALJ Kenyon committed error, in part, by relying on state agency consultants Drs. Matyi and Souder, who plaintiff also contends did not take a fresh look at her medical records. (*Id.* at 3232-33). Plaintiff argues even if another review will result in the same outcome, she is still nevertheless entitled to a remand given the alleged legal error.

---

[4] The parties generally agree with the ALJ's summary of plaintiff's medical history. (*See* Doc. 7 at PAGEID 3223; Doc. 12 at PAGEID 3933). Specific medical records will be discussed as relevant to the analysis.

The Commissioner counters that the ALJ appropriately accounted for a prior decision by giving the evidence the "fresh look" required, despite having cited to an incorrect legal standard. (Doc. 9).  The Commissioner contends the ALJ's decision constitutes a proper review of plaintiff's application, including review of new evidence in the record.  Thus, the Commissioner asserts the ALJ properly considered the record as a whole and evaluated the medical opinions in accordance with the appropriate regulations.

### 1.  The ALJ Satisfied the Requirements of *Earley*.

If a social security claimant has filed a prior application, res judicata may apply to the administrative proceedings.  *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018) (citing *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997)).  *See also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such a hearing.").  The Sixth Circuit held in *Drummond* that "absent changed circumstances" the findings made by an ALJ as part of a prior disability determination are binding on a subsequent ALJ in later proceedings.  126 F.3d at 842.  Following the decision in *Drummond*, the Commissioner issued Acquiescence Ruling (AR) 98-4(6), 1998 WL 283902 (June 1, 1998).  Acquiescence AR 98-4(6) explains:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

*Id*. at *3.

In June 2018, the Sixth Circuit clarified its decision in *Drummond* and the ways in which the decision seeks to protect principles of "consistency between proceedings and finality with respect to resolved applications."  *Earley*, 893 F.3d at 931.  The Sixth Circuit explained that when

a claimant who has filed a prior application files "a second application for the same period of time finally rejected by the first application and offers no cognizable explanation for revisiting the first decision, res judicata would bar the second application." *Id.* at 933. But the Court of Appeals also explained that "[w]hen an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Earley*, 893 F.3d at 933. "[A]n individual may file a second application - for a new period of time - for all manner of reasons," and res judicata would not apply to the second application. *Id.* When a claimant seeks disability benefits for a distinct time period, she can "obtain independent review" of the application so long as she "presents evidence of a change in condition or satisfies a new regulatory threshold." *Id.* at 932. Principles of consistency and finality "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability," while bearing in mind the record and findings in the prior proceedings. *Id.* at 931. As the Sixth Circuit elaborated:

> That is why it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application.

> At the same time, an applicant remains free to bring a second application that introduces no new evidence or very little new evidence after a failed application. But she should not have high expectations about success if the second filing mimics the first one and the individual has not reached any new age (or other) threshold to obtain benefits. What's past likely will be precedent in that setting—as indeed it should be in a system designed to apply the law consistently to similarly situated individuals.

*Id.* at 933-934. In rejecting the suggestion that "the administrative law judge should completely ignore earlier findings and applications," the Court of Appeals determined that "[f]resh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* at 934.

8

The Sixth Circuit recently applied these principles in *Dennis D. v. Comm'r of Soc. Sec.*, No. 23-3667, 2024 WL 1193662 (6th Cir. Mar. 20, 2024), where counsel advanced arguments similar to those at bar. In *Dennis D.*, the Sixth Circuit examined whether the ALJ in that case treated his review of the new disability application as if he were bound by the prior disability application, thereby denying the claimant the "fresh look" *Earley* requires. The Court of Appeals determined that where an ALJ engages in an in-depth review and analysis of (1) the new evidence related to the claimant's current claim period, and (2) the evidence and findings from the prior decision, *Earley's* "fresh look" is satisfied. *Id.* at *4. The Court of Appeals found that "it is the responsibility of the ALJ reviewing the claim for the later unadjudicated period to determine how much weight to accord both the prior decision and any newly submitted evidence; this includes the effect of a new regulatory threshold, if applicable." *Id.* at *4. The Sixth Circuit examined the ALJ's statements at the administrative hearing that he was not "bound" by any prior decisions; the ALJ's discussion of the claimant's hearing testimony; and the ALJ's review of the medical records for the relevant period, including those related to the prior application and current application, and determined the ALJ did not consider himself bound by the earlier ALJ ruling.

The Sixth Circuit also rejected the view advanced by plaintiff here that it is improper for the subsequent ALJ "to measure the new medical evidence 'against the backdrop' of the prior RFC finding instead of assessing the new evidence on its own merits." *Dennis D.*, 2024 WL 1193662, at *6 (citing *Nadia A.T. v. Comm'r of Soc. Sec.*, No. 3:22-cv-12, 2023 WL 2401723, at *4 (S.D. Ohio Mar. 8, 2023)). The Court of Appeals found "it is perfectly acceptable for a subsequent ALJ to presume the accuracy of a prior finding," for this promotes "finality, efficiency, and consistent treatment of like cases." *Dennis D.*, 2024 WL 1193662, at *6.

> [T]he suggestion that an ALJ considering a subsequent application should not evaluate a claimant's new records for evidence of a significant change in relation

to a prior valid finding strikes us as an overly broad reading of *Earley*. Presuming accuracy is not the same as treating prior findings as binding.

*Id.*[5]

In this case, ALJ Kenyon addressed *Drummond* and plaintiff's previous disability

application:

> The Sixth Circuit concluded that where a final decision of SSA after a hearing on a prior disability claim contains a finding of a claimant's residual functional capacity, SSA may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim unless new and additional evidence or changed circumstances provide a basis for a different finding of the claimant's residual functional capacity (Acquiescence Ruling 98-4 (6); *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997)). In this case, the record shows that, on November 6, 2017, [plaintiff] filed an application for a period of disability and disability insurance benefits, alleging disability beginning November 4, 2017. On August 22, 2019, an Administrative Law Judge (ALJ) issued an unfavorable decision (Ex. B7A). [Plaintiff] filed the present application on June 10, 2020. The undersigned recognizes that the record contains new and additional evidence. For example, [plaintiff] reported an onset of Meniere's disease symptoms in February of 2020 (Ex. B4F/187). In addition, at a consultative examination in March of 2022, [plaintiff] had a BMI of 35.4, in the obese range (Ex. B9F/1). As discussed fully above, the new and additional evidence provides a basis for a light residual functional capacity, with postural and manipulative limitations. However, [plaintiff's] new issues, particularly the dizziness/vertigo caused by Meniere's disease, supports a further limitation regarding [plaintiff]'s ability to drive automotive equipment, which was not reported by the prior ALJ. Therefore, the undersigned has generally, but not fully, incorporated the findings regarding [plaintiff's] functional limitations from the August 22, 2019 unfavorable decision into the present decision.

(Tr. 2025).

As an initial matter, to the extent plaintiff argues ALJ Kenyon used an incorrect legal

standard as evidenced by his citation of *Drummond* without the further clarification of *Earley*

---

[5] In an effort to undermine ALJ Kenyon's decision in this case, plaintiff relies on cases finding reversible error where the ALJ recites the *Drummond* standard without the *Earley* clarification and purportedly uses the previous ALJ's RFC determination as "a mandatory starting place" for the current RFC. *See, e.g., Nadia A.T.*, 2023 WL 2401723, at *4. Given the Sixth Circuit's decision in *Dennis D.* and its apparent abrogation of the district court case holdings upon which plaintiff relies, the Court declines to find error where an ALJ considers new evidence "against the backdrop" of a previous ALJ's finding. (Doc. 7 at PAGEID 3228) (citing *Nadia A. T.,* 2023 WL 2401723, at *4).

(Doc. 7 at PAGEID 3225), this does not require reversal of the ALJ's decision.  As courts addressing this issue have explained, "while citation to *Drummond* without *Earley* raises a yellow flag, the ultimate question here is whether the ALJ gave a fresh review to the evidence."  *Mark D. v. Comm'r of Soc. Sec.*, No. 3:22-cv-58, 2023 WL 312795, at *5 (S.D. Ohio Jan. 19, 2023); *Lambert v. Comm'r of Soc. Sec.*, No. 1:18-cv-116, 2019 WL 336903, at *5 (S.D. Ohio Jan. 28, 2019), *report and recommendation adopted by* 2019 WL 1125759 (S.D. Ohio Mar. 12, 2019) (*Earley* is satisfied if ALJ gave new evidence a "fresh look" despite purporting to follow *Drummond*).  Furthermore, plaintiff has not pointed to record evidence she contends ALJ Kenyon failed to consider in his decision or even specific instances where ALJ Kenyon relied on the prior decision in formulating plaintiff's current RFC.  And, but for, the ALJ's citation to the legal standard in *Drummond*, plaintiff has not otherwise shown – or even argued – how the ALJ's decision is in error.

ALJ Kenyon's discussion indicates he did not consider himself bound by the previous ALJ decision's RFC.  Rather, he recognized plaintiff's new evidence required an additional RFC limitation based on plaintiff's dizziness and vertigo caused by Meniere's disease.  Contrary to plaintiff's contention that the ALJ "found that he was 'generally' *bound* by the prior ALJ's findings and incorporated them into his RFC" (Doc. 7 at PAGEID 3226) (emphasis added), ALJ Kenyon actually stated he "generally, but not fully, incorporated the findings" of plaintiff's limitations from the previous ALJ decision, reflecting he understood he was not bound by the previous decision.  ALJ Kenyon's decision reflects a proper evaluation of plaintiff's "new records for evidence of a significant change in relation to a prior valid finding."  *Dennis D.*, 2024 WL 1193662, at *6.

ALJ Kenyon's decision as a whole reflects he provided the fresh review that *Earley* requires.  ALJ Kenyon conducted an in-depth review and analysis of plaintiff's new evidence related to the current application as well as the evidence and findings from his previous decision.  ALJ Kenyon fully evaluated and discussed plaintiff's complaints of knee and back pain, Meniere's disease, obesity, and mental health issues in formulating her RFC.  He reviewed plaintiff's evaluations and treatment notes from November 2017 through August 2022, a period extending well beyond the prior decision of August 2019.  (Tr. 2019-2022).

Regarding plaintiff's knee pain, ALJ Kenyon reviewed June 2018 imaging records that showed mild to moderate osteoarthritic changes in the joints.  (Tr. 2019 citing Tr. 470).  During a January 2019 evaluation, plaintiff showed full strength in her lower extremities, with a normal range of motion in her knees.  (Tr. 2020 citing Tr. 348).  After physical therapy, plaintiff reported improvement in her knee pain.  (*Id.* citing Tr. 1870-1873).  By March 2019, plaintiff reported her knee pain was feeling better and rated it at a two out of ten.  (*Id.* citing Tr. 1852).  A March 2022 examination showed plaintiff had normal knee range of motion and full strength and sensation in her lower extremities.  (*Id.* citing Tr. 2614-15).  ALJ Kenyon noted that at an August 2022 functional capacity evaluation, plaintiff did not display any significant range of motion or strength deficits.  (*Id.* citing Tr. 3119).

ALJ Kenyon reviewed the evidence of plaintiff's spinal impairments.  In November of 2017, plaintiff was seen for low back pain, along with neck and mid-back stiffness.  (Tr. 2019 citing Tr. 355-356).  She showed impaired range of motion in the lumbar spine.  (*Id.* citing Tr. 356-58).  At a May 2018 functional capacity evaluation, plaintiff displayed normal range of motion in the upper and lower extremities with impaired range of motion in the cervical spine and trunk.  (*Id.* citing Tr. 3035).  Progress notes from December 2019 revealed a normal neck

12

examination and normal gait. (Tr. 2020 citing Tr. 1681). Although plaintiff reported ongoing neck pain in January of 2020, she reported marked improvement in her lumbar symptoms. (*Id.* citing Tr. 1638-39). At a March 2022 consultant evaluation, Dr. Phillip Swedberg noted that plaintiff used a cane for assistance and appeared to have an antalgic gait upon examination. (*Id.* citing Tr. 2614). Plaintiff reported that pain radiated up her back between her shoulder blades but did not radiate to her lower extremities. (*Id.* citing Tr. 2613). She reported prolonged ambulation, standing or weight-bearing made her pain worse. (*Id.*). While plaintiff had trouble bending at the waist and exhibited limitation in range of motion in the lumbar spine, Dr. Swedberg reported that plaintiff displayed normal range of motion in the cervical spine, hips, and ankles, and normal upper extremity range of motion, strength, and sensation. (*Id.* citing 2619-20). The examination revealed no evidence of radiculopathy. (Tr. 2020 citing Tr. 2615). Medical imaging, however, showed multi-level degenerative changes in the lumbar spine. (*Id.* citing Tr. 2622).

ALJ Kenyon also considered plaintiff's functional capacity examination of August 2022. (Tr. 2021 citing Tr. 3114). On examination, plaintiff used a cane and had a mildly antalgic gait. (*Id.* citing Tr. 3114). Despite her complaints of worsening of back pain, along with neck and bilateral knee pain, plaintiff did not display any significant range of motion or strength deficits on physical examination. (*Id.* citing Tr. 3113, 3119). She showed no deficits with fingering, grasping, and other motor activities in the hands. (*Id.* citing Tr. 3118).

ALJ Kenyon also fully reviewed the evidence of plaintiff's Meniere's disease and symptoms. He noted that plaintiff began complaining of a headache and dizziness in December 2019. (Tr. 2020 citing Tr. 1678, 1680). As ALJ Kenyon noted in his decision, plaintiff did not have these complaints prior to the August 2019 decision. (Tr. 2025). By January of 2020,

plaintiff was reporting symptoms of vertigo and lightheadedness, and it was determined

Meniere's disease could not be ruled out.  (Tr. 2020 citing Tr. 1612-13).  Plaintiff's symptoms

persisted, and in October of 2020, she was seen by a neurologist.  (*Id*. citing Tr. 1524).  Plaintiff's

coordination was noted to be intact, and she had a normal, steady gait.  (*Id*. citing Tr. 1526).  She

was diagnosed with episodic vertigo, with differential diagnoses including Meniere's disease and

vestibular migraine.  (*Id*.).  Plaintiff reported she was experiencing dizzy spells during a March

2021 examination but noted the episodes were becoming less frequent.  (*Id*. citing Tr. 2373).

During her March 2022 examination with Dr. Swedberg, plaintiff denied having any dizziness.

(Tr. 2613).

ALJ Kenyon also recognized new evidence of obesity.  He noted that in March of 2022,

plaintiff's weight and height indicated a BMI of 35.4, which was in the obese range.  (Tr. 2021

citing Tr. 2613).  He noted her level of obesity could be considered a severe impairment, and he

considered it in crafting plaintiff's RFC.  (*Id.*).

ALJ Kenyon considered the findings from plaintiff's March 2022 consultative

examination with Dr. Swedberg[6]  (Tr. 2020 citing Tr. 2613-2623) and a functional capacity

evaluation completed on plaintiff by Christopher M. Sullivan, PT, DPT, in August of 2022[7] (Tr.

2021 citing Tr. 3111-3124) as compared to prior evaluations; thus, ALJ Kenyon evaluated

plaintiff's abilities over time, including evidence included in the August 2019 decision and after.

---

[6] The Court notes although ALJ Kenyon relied on Dr. Swedberg's clinical observations, the ALJ found Dr. Swedberg's recommendation regarding plaintiff's functional abilities "vague in nature."  (Tr. 2024 citing Tr. 2613-2623).  Nonetheless, ALJ Kenyon determined Dr. Swedberg's recommendation was generally supported by his own objective findings and other evidence of record.  Thus, the ALJ found Dr. Swedberg's recommendation as to plaintiff's abilities partially persuasive.  (*Id*.)

[7] The Court notes ALJ Kenyon cited to clinical observations made during the functional capacity evaluation. However, the ALJ did not find the evaluator's recommendation that plaintiff was limited to light sedentary work as persuasive.  (Tr. 2024).  The ALJ concluded this opinion was generally based on plaintiff's "own self-limitations as opposed to genuinely objective findings that were consistent with the evidence of record."  (*Id*.)

For example, ALJ Kenyon explained that during a May 2018 functional capacity evaluation, plaintiff told an examiner she "could perform activities of daily living if she paced herself and could do food preparation activities with breaks." (Tr. 2023 citing Tr. 3033). During the August 2022 functional capacity evaluation, plaintiff told the examiner she could do daily chores around the house and required "minimal assistance" with activities of daily living, including cooking, cleaning, and dressing herself. Further, she said she could "help out" with some dishes or light cooking. (*Id.* citing Tr. 3113).

ALJ Kenyon further reviewed evidence of plaintiff's mental health impairments from December 2017 to August 2022. (Tr. 2021-2023). He analyzed the evidence from the previous decision as well as the new evidence relating to plaintiff's current claim. ALJ Kenyon noted plaintiff suffered from PTSD and major depressive disorder as detailed in a December of 2017 examination. (Tr. 2021 citing Tr. 456). At that time, plaintiff appeared depressed and anxious, but her thought processes were linear and goal directed, with normal thought content. (*Id.* citing Tr. 459). She showed average intellect, mild memory impairment, and fair insight and judgment. (*Id.*).

ALJ Kenyon then noted plaintiff saw a mental health provider in February 2019 for the first time since November of 2018, and her PTSD was reported to be improved and stable. (Tr. 2021 citing Tr. 1856). During this examination, plaintiff displayed normal psychomotor behavior; normal speech; and coherent, relevant, logical, and goal-directed thought processes. (*Id.* citing Tr. 1859). Plaintiff had a calm, stable affect, with a sad/depressed mood and showed no gross deficits in cognitive functioning. (*Id.*).

ALJ Kenyon noted that in May of 2019, plaintiff reported continued depression, low energy and motivation, anxiety, and increased nightmares; however, she reported ongoing

15

improvement in her PTSD.  (*Id*. citing Tr. 1841-42).  Then, in June of 2019, plaintiff reported

feeling less depressed but more irritable and agitated.  (*Id*. citing Tr. 1831).  By August of 2019,

plaintiff reported she was "doing fairly well."  (*Id*. citing Tr. 1785).  From plaintiff's treatment

notes in October of 2019, the ALJ noted she reported increased anxiety and irritability, with more

frequently depression.  (*Id*. citing Tr. 1717-1720).  While it was noted that plaintiff was subdued

and appeared anxious and depressed, she was cooperative and attentive, with a normal

appearance.  (*Id*.).  She exhibited good eye contact, and she displayed normal speech, thought

processes, and thought content.  (*Id*.).  ALJ Kenyon noted although plaintiff reported an increase

in depression in April of 2020, her anxiety was minimal.  And while prior therapy had helped her,

plaintiff reported she was taking a break from therapy at that time.  (Tr. 2022 citing Tr. 326).

Upon examination, her thought processes were coherent, linear, and goal-directed, with normal

thought content, and she displayed fair insight and judgment.  (*Id*. citing Tr. 329).  In July 2021,

plaintiff reported doing well with her depression, but she complained of ongoing issues with

anxiety.  (*Id*. citing Tr. 2331).  She reported improvement in her nightmares and PTSD at that

time.  (*Id*.).  On examination, plaintiff's thought processes and content were normal; her recent

and remote memory were intact, as were her attention span and concentration; she had fair insight

and judgment; and she had a normal fund of knowledge.  (*Id*. citing Tr. 2335).  In August of 2021,

plaintiff reported worsening depression and anxiety, specifically that it was at "an all time high."

(*Id*. citing Tr. 2322).   Despite this, plaintiff was cooperative, with normal speech, thought

processes, and thought content.  (*Id*.).  Her insight and judgment were rated as fair.  (*Id*. citing Tr.

2324-25).  By November of 2021, plaintiff reported feeling "pretty good but a little depressed for

the last week."  (*Id*. citing Tr. 2290).  ALJ Kenyon noted that Dr. Swedberg's March 2022

evaluation showed plaintiff's memory, ability to relate, appearance, and orientation were good,

and she displayed normal intellectual functioning. (Tr. 2614). In August of 2022, the ALJ noted plaintiff reported she could do daily chores around the house and required minimal assistance with activities of daily living, including cooking, cleaning, and dressing herself. (Tr. 2023 citing Tr. 3113).

In considering the entire record, including the new and additional evidence, ALJ Kenyon determined "the medical evidence and other evidence in the record is not consistent with [plaintiff's] allegations regarding her symptoms" (Tr. 2023) – a conclusion with which plaintiff has not taken issue in this case. The ALJ determined the record supported a light residual functional capacity, with postural and manipulative limitations. However, based on the dizziness/vertigo caused by plaintiff's Meniere's disease, ALJ Kenyon found a further limitation regarding her ability to drive automotive equipment was supported. (Tr. 2025). Also, plaintiff's age category changed beginning on April 13, 2022, pursuant 20 C.F.R. 404.1563. (Tr. 2028). This, along with her assessed RFC, education, and work experience, led the ALJ to conclude that beginning on April 13, 2022, plaintiff became disabled pursuant to Medical-Vocational Rule 202.06. (*Id*.).

Nothing in the substance of ALJ Kenyon's decision leads this Court to conclude he found himself constrained by the prior decision on plaintiff's RFC in violation of *Earley*. And other than the ALJ's citation to *Drummond*, plaintiff has not argued otherwise. Even though ALJ Kenyon's decision does not mention *Earley*, he gave the evidence the fresh review to which plaintiff was entitled. The ALJ applied the correct legal standard, and plaintiff's assignment of error should be overruled.

**2. The ALJ Properly Considered the Opinions of Drs. Matyi and Souder.**

Although not listed as a separate error, plaintiff also argues ALJ Kenyon erred by relying on the evaluations of state agency reviewing psychologists Cindy Matyi, Ph.D., and Janet Souder, Psy.D. Plaintiff argues the holding in *Earley* has been extended to reviewing doctors, citing *Parrish v. Comm'r of Soc. Sec.*, No.3:17-cv-411, 2019 WL 4667730, at *2 (S.D. Ohio Sept. 25, 2019). Thus, she argues Drs. Matyi and Souder simply adopted the prior RFC findings and did not give the medical evidence a fresh review; as such, plaintiff argues the ALJ's reliance on their opinions as persuasive is error.

Although both Drs. Matyi and Souder stated they adopted the prior RFC findings (Tr. 95, 103), they each reviewed medical records dated after the prior decision. (Tr. 94, 102). Dr. Matyi concluded that the "*[c]urrent evidence* is consistent with the ALJ decision dated 8/22/2019," and she stated she was adopting the mental RFC from that decision. (Tr. 98) (emphasis added). Dr. Souder stated that no additional psychiatric medical evidence of record was received on reconsideration, and the initial findings as reflected in the mental RFC remain supported. (Tr. 106). Only after independently reviewing plaintiff's records, including many that post-dated the prior ALJ's decision, did both doctors state they were adopting the prior RFC. (Tr. 95, 103). This appears to comply with the "fresh review" requirement of *Earley*.

In any event, even if the state agency reviewing psychologists did not complete a "fresh review," ALJ Kenyon nevertheless reached an independent determination on plaintiff's RFC in accordance with *Earley*. ALJ Kenyon found the state agency psychologists' opinions persuasive, not because they adopted the prior mental RFC, but because they supported their opinions with an explanation of the evidence they relied on (including evidence the post-dated the previous decision), and their assessments were consistent with the record as a whole:

18

> For example, the claimant experienced recurrent memories and dreams, persistent avoidance, diminished interest, feelings of detachment, irritability, hypervigilance, an exaggerated startle response, impaired concentration, and poor sleep, but her providers generally noted that the claimant was alert, oriented, and cooperative, showed normal hygiene and grooming, had normal speech, displayed linear, coherent, and goal-directed thought processes, had average intellect, had intact recent memory, remote memory, attention span, and concentration and had fair insight and judgment (Ex. B1F/33, 64, 162-163; B4F/394-395, 519, 534; B7F/48, 58; B9F/2). As this evidence is consistent with the above limitations, the undersigned finds the opinions of Dr. Matyi and Dr. Souder persuasive.

(Tr. 2024).  Based on the detailed review completed by ALJ Kenyon and the other evidence of record he relied upon in making his decision, any error in relying on the opinions of Drs. Matyi and Souder, *even if* they were impermissibly formed, would be harmless.  ALJ Kenyon, after completing a thorough review of the entire record, determined their assessments were consistent with the record.  (Tr. 2024).  Given this consistency, the ALJ considered the opinions as persuasive.  Thus, if there is error, it is harmless at best; plaintiff's assignment of error should be overruled.

### IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's statement of errors (Doc. 7) be **OVERRULED** and the Commissioner's disability finding be **AFFIRMED**.

2. Judgment be entered in favor of the Commissioner and this case be closed on the docket of the Court.

Date: 4/12/2024

Karen L. Litkovitz
Chief United States Magistrate Judge

19

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

KRISTA L.,                                    Case No. 3:23-cv-144
     Plaintiff,                          Newman, J.
                                              Litkovitz, MJ.
vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).